Erik J. Stone, Arizona Bar No.
**JONES, SKELTON & HOCHULI, P.L.C.**
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004
Telephone: (602) 263-7309
Fax: (602) 200-7875
Email: estone@jshfirm.com

Paul Sharer                          Joanne R. Bush
(*pro hac vice* forthcoming)          (*pro hac vice* forthcoming)
**JONES DAY**                        **JONES DAY**
51 Louisiana Avenue, N.W.            717 Texas, Suite 3300
Washington, D.C. 20001-2113          Houston, Texas 77002
Telephone: (202) 879-5481            Telephone: (832) 239-3782
Fax: (123) 626-1700                  Fax: (832) 239-3600
Email: psharer@jonesday.com          Email: jrbush@jonesday.com

*Attorneys for Plaintiff*

## IN UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Physics, Materials, and Applied Mathematics Research, L.L.C., | Case No.: |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:** |
| v. | |
| Jeremy Yeak; and Opticslah, LLC, | 1. Defend Trade Secrets Act, 15 U.S.C. § 1836(b) |
| Defendants. | 2. Arizona Uniform Trade Secrets Act, A.R.S § 44-401 et seq. |
| | 3–5. Breach of Contract |
| | 6. Breach of Duty of Loyalty |
| | 7. Fraud |
| | 8. Conversion |
| | 9. Tortious Interference with Contract |
| | 10. Tortious Interference with Business Expectancy |
| | 11. Unfair Competition |
| | 12. Unjust Enrichment |

8740303.1

**INTRODUCTION**

1.      This case is about a former employee of Arizona-based Plaintiff Physics, Materials, and Applied Mathematics Research L.L.C. ("PM&AM"), Defendant Jeremy Yeak ("Yeak") who, while employed by Plaintiff to develop its remote-sensing laser engineering business, had surreptitiously formed his own company, Defendant Opticslah, LLC, to compete with PM&AM for that work. Yeak entered into an Employment Agreement promising to keep PM&AM information confidential and accordingly to restrict his business activities during and after his employment at PM&AM.  PM&AM thereafter entrusted Yeak with its trade secrets and confidential information, providing him with specialized training, and paying for him to travel to conferences and develop his relationships within this market.

2.      Despite his contractual, statutory and common law obligations to PM&AM, during his employment at PM&AM Yeak formed Opticslah and used PM&AM property to obtain government-funded research grants for Opticslah and otherwise develop Opticslah into the business that PM&AM employed him to develop for PM&AM.  Meanwhile, Yeak not only failed to disclose to PM&AM that he had formed and was working for competitor Opticslah, Yeak embarked on a deceptive course of conduct to steer PM&AM away from remote-sensing work so it would not be suspicious.  Yeak led PM&AM to believe that the government was not interested in continuing to fund the remote-sensing work it had been doing, when in fact he knew that the government was increasingly interested in this area.

3.      Opticslah subsequently procured a government funded research grant (for remote sensing work) based on the confidential information that Yeak had obtained from PM&AM, yet, Yeak still did not tell PM&AM about his activities. Instead, he concocted a story and told PM&AM that he wanted a career change and was going to pursue a career as a patent lawyer.  Yeak continued to work for PM&AM, at first with reduced hours and then on an hourly basis, that would give

8740303.1

him the flexibility to prepare for law school as he deemed necessary, while continuing to tell PM&AM that he was visiting law schools, studying, and interviewing with law firms.  As a result, PM&AM continued to give Yeak access to its confidential information and its secure facility in Tucson.

4.      When PM&AM discovered it was missing laboratory records for which Yeak was responsible, it undertook an investigation which revealed Yeak's unlawful conduct and resulted in the termination of his employment at PM&AM in December 2019, and has been engaged with his counsel in an attempt to resolve this matter.  Yeak has refused to remediate his numerous breaches of the Employment Agreement or violations of law.

5.      Having been unable to resolve this dispute, Plaintiff PM&AM brings this action against Defendants Yeak and Opticslah for misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b), and Arizona Uniform Trade Secrets Act, A.R.S § 44-401 *et seq*., conversion, tortious interference with business expectancy, unfair competition, and unjust enrichment; against Yeak for breach of contract, breach of his duty of loyalty, and fraud; and against Opticslah for tortious interference with the employment contract that PM&AM has with Yeak.

**PARTIES**

6.      Plaintiff PM&AM is a limited liability company organized under the laws of the State of Texas with its principal place of business located at 1665 E. 18th Street, Suite 112, Tucson, Arizona 85719.

7.      Defendant Yeak is an individual who is a former employee of Plaintiff PM&AM.  Upon information and belief, Defendant Yeak resides at 4133 E Camino De La Colina, Tucson, Arizona 85711.

8.      Defendant Opticslah is a limited liability company organized under the laws of the State of New Mexico.  Opticslah is registered to transact business as a

1  foreign limited liability company under the laws of the State of Arizona, and whose

2  statutory agent is Defendant Yeak, with address at 4133 E Camino De La Colina,

3  Tucson, Arizona 85711.

4

5  **JURISDICTION AND VENUE**

6      9.     This Court has original subject matter jurisdiction over Plaintiff

7  PM&AM's claims pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(b).

8  This Court has supplemental jurisdiction over the Arizona state law claims pursuant

9  to 28 U.S.C. § 1367 because the state law claims are so related to the claims

10 pursuant to the Defend Trade Secrets Act that they form part of the same case or

11 controversy and derive from a common nucleus of operative facts.

12     10.    This Court has personal jurisdiction over Defendant Yeak because, on

13 information and belief, he is an Arizona resident living in this District, has

14 conducted tortious acts and breaches of contract that have caused injury within this

15 State and within this District, and the claims alleged arise out of such tortious and

16 breaching acts.

17     11.    This Court has personal jurisdiction over Defendant Opticslah because

18 it has established minimum contacts with this forum.  Opticslah is registered to

19 transact business as a foreign limited liability company under the laws of the State

20 of Arizona, whose statutory agent has an address within this State and within this

21 District.  Opticslah regularly and continuously conducts business within this

22 judicial district, by, among other things, marketing, advertising, offering to sell, and

23 selling services in this judicial district, including the services which are the subject

24 of this Complaint.  Additionally, this Court has personal jurisdiction over Opticslah

25 because it has conducted tortious acts that have caused injury within this State and

26 within this judicial district, and the claims alleged arise out of such tortious acts.

27     12.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§

28 1391(b) and (c) because the claims alleged in the Complaint arose, in part, in this

District, and because this Court has personal jurisdiction over Defendant in this District.

## STATEMENT OF FACTS

**A.     Plaintiff PM&AM**

13.     Since its founding in 1998, Plaintiff PM&AM has been engaged in basic and applied research in high intensity laser systems, ultrashort pulse lasers, laser-guided electric discharge, standoff material detection ((also herein referred to as "remote sensing" which includes Laser Induced Breakdown Spectroscopy (LIBS) and Laser Absorption Spectroscopy (LAS)), and laser marking and material processing.

14.     Plaintiff PM&AM, through long and extensive research and development, and the expenditure of a considerable amount of time and effort and large sums of money, has developed commercially valuable trade secrets ("PM&AM Trade Secrets") and confidential, proprietary, scientific, technical, and business information concerning the research, development, and application of laser systems, including, *inter alia*, the long-range detection and interrogation of nuclear, radiological, chemical, and explosive materials, the propagation and delivery of high-intensity laser beams to targets at long distances, flow control, and the precision micro-machining and marking of metallic, organic, and explosive materials with ultrashort laser pulses. PM&AM has embodied such information in its written materials, drawings, computer codes, processes, procedures, equipment, lists of suppliers, customers, and contacts, and the like, and this information constitutes a valuable commercial asset of PM&AM. PM&AM has kept this information secret, with restrictions on its further use and disclosure by all those to whom this information has become known.

15.     Plaintiff PM&AM has taken reasonable measures to protect the secrecy of the PM&AM Trade Secrets and other confidential information including

8740303.1

- 5 -

by, among other things, confining the PM&AM Trade Secrets and other confidential information to locked facilities and password-protected computer systems; recording an electronic access log for the locked facilities; installing an alarm system for PM&AM's facilities; limiting access to the PM&AM Trade Secrets and other confidential information to those employees who need it; escorting visitors when they are present at PM&AM's facilities; requiring employees such as Defendant Yeak to sign a confidentiality agreement; requiring departing employees to return immediately all embodiments of PM&AM Trade Secrets and other confidential information upon departure; and reminding departing employees of their continuing post-employment obligations.

**B.** **Defendant Yeak's Employment at PM&AM**

16.    Defendant Yeak began working at Plaintiff PM&AM in or around late 2009, when Yeak was a graduate student from Malaysia studying Optical Science and Engineering at the University of New Mexico.

17.    Plaintiff PM&AM and Defendant Yeak's Employment Agreement, dated December 30, 2013 (the "Employment Agreement"), is governed by Texas law.  A true and correct copy of the Employment Agreement is attached as Exhibit 1 to this Complaint.

18.    In Section 2 of the Employment Agreement, Yeak agreed to hold all of PM&AM's "Confidential Information" (as defined in Section 1 of the Employment Agreement) in trust and confidence, and not to use PM&AM's Confidential Information for his own purposes or to disclose it to others, and not to use PM&AM's Confidential Information for any purpose other than to perform work for PM&AM.

19.    In Section 4 of the Employment Agreement, Yeak agreed that all "Developments" he makes during his employment that are related to the actual or expected business or activities of PM&AM that result from or are suggested by any work that Yeak or others do on behalf of PM&AM are the property of PM&AM.

1   Also in Section 4, Yeak agreed that the rights, titles and interests in all such

2   Developments were assigned to PM&AM and to promptly disclose to PM&AM all

3   covered Developments.

4       20.   "Developments" are defined in Section 1 of the Employment

5   Agreement as "inventions, whether or not patentable, new technology, Confidential

6   Information, computer programs, copyrightable works, trademarks or other

7   intellectual property."

8       21.   In Section 13 of the Employment Agreement, Yeak stated that there

9   are no unpatented inventions that he made or conceived prior to his employment at

10  PM&AM and thus there are no inventions that would be excluded from the

11  Employment Agreement.

12      22.   In Section 5 of the Employment Agreement, Yeak agreed not to

13  engage in any outside employment or business activities during his employment

14  with PM&AM:

15          Employee will devote substantially all of Employee's working time

16          and attention to the performance of Employee's assigned duties as

17          required, and will not, without the written consent of Employer,

18          engage, directly or indirectly, in any other employment, business or

19          professional activity for compensation, profit or financial gain.

20          Employee will not assume any paid or unpaid directorship.  During

21          Employee's employment with Employer, Employee will not,

22          without the advance written consent of Employer, engage in any

23          activity which may constitute a conflict with Employer's interests

24          regarding Confidential Information or Developments. Any question

25          whether a particular activity may constitute a conflict of interest

26          shall be resolved by obtaining Employer's written approval before

27          engaging in that activity.

28

8740303.1

23.     In Section 9(a) of the Employment Agreement, Yeak agreed that, during his employment and for two years after his termination of employment (the "Non-Compete Period"), he would not, in relevant part: (1) directly or indirectly participate or engage in any business entity which is, or which is about to become, engaged in providing goods and/or services in competition with PM&AM within the States of Arizona, Texas or Hawaii and within a geographical radius of 100 miles from any PM&AM location; or (2) directly or indirectly solicit, induce or retain, or assist others in taking PM&AM government/commercial/academic contracts, subcontracts, or orders that are current, pending, or under development at the time of Yeak's termination of employment.

24.     In Section 9(b) of the Employment Agreement, Yeak and PM&AM agreed that if Yeak obtained a contract or order in violation of Section 9(a), he would pay PM&AM an amount equal to 30% of such contract, subcontract, or order to compensate PM&AM for its lost revenue stream and growth.  Section 9(b) requires Yeak to make such payment to PM&AM within 30 days from mailing a written notice to Yeak advising him of the amount due.  As specifically provided in the Employment Agreement, such damages are in addition to any other available legal and equitable remedies.

**C.     PM&AM Entrusts Yeak With Its Confidential Information and Pays Him to Develop Its Remote-Sensing Business.**

25.     After Yeak and PM&AM entered into the Employment Agreement, PM&AM tasked him with developing its remote-sensing laser business.  This included identifying government funding and commercial business opportunities, and developing relationships in this area.

26.     Yeak had access to PM&AM's Confidential Information and trade secrets.  For instance, Yeak participated in confidential internal strategy meetings regarding current government-funding research projects, proposals to obtain additional government-funding research projects, and commercialization plans and

1   business strategies.  Yeak was provided and had access to PM&AM's research

2   plans, business strategies, suppliers, and customers.  Yeak also had access to

3   PM&AM's Tucson facility that contained PM&AM's specialized equipment,

4   computer systems, and research.

5          27.    PM&AM provided Yeak with specialized training in laser systems,

6   processes, and applications, and taught him how to procure and manage a

7   government-funded research grant.  PM&AM also spent considerable funds so he

8   could develop relationships and attend conferences in the specialized field of laser

9   systems.

10          28.    On or around April 2014, the U.S. Department of Energy ("DOE")

11   awarded PM&AM a Phase II grant for its proposal titled "Filament-Based Laser-

12   Induced Breakdown Spectroscopy for the Standoff Detection of Radiological

13   Materials."  This grant was awarded through Contract #DE-SC0004311.  Yeak was

14   PM&AM's Principal Investigator on Contract #DE-SC0004311.  Contract #DE-

15   SC0004311 ended on May 14, 2017.

16          29.    As the Principal Investigator on PM&AM's grant, Yeak was the

17   primary liaison between PM&AM and the government customer at the DOE.

18   PM&AM trusted Yeak to interface with the government on its behalf regarding its

19   then-existing remote-sensing grant and to explore and secure additional government

20   funding opportunities regarding remote-sensing.  Yeak was also responsible for

21   executing the project, managing subcontractors and collaborators, and furthering

22   PM&AM's commercialization plans.

23          30.    During his employment at PM&AM, Yeak created Developments

24   related to the actual or expected business of PM&AM.

25   **D.    Defendant Yeak Forms Competitor Opticslah and Competes With**

26   **       PM&AM.**

27

28

31.   On or around June 1, 2015, unbeknownst to PM&AM, Yeak incorporated Opticslah, LLC with the New Mexico Secretary of State.  Yeak is the sole member of Opticslah.

32.   According to Opticslah's website, "Opticslah was formed in 2015 to seek new techniques to apply cost-effective laser solutions for a wide range of applications including laser marking/engraving, laser-induced breakdown spectroscopy (LIBS) and high precision dual-frequency comb spectroscopy (DFCS) especially for isotopic characterization of nuclear materials.  Our main areas of expertise include solid-state laser development, optical emission and absorption spectroscopy techniques."[1]  These are the business activities that PM&AM tasked Yeak with developing for PM&AM.

33.   Since the formation of Opticslah, Yeak sought business opportunities for Opticslah.

34.   In the course of conducting Opticslash's business, Yeak disclosed and used PM&AM's Confidential Information and trade secrets on behalf of Opticslah.

35.   By pursuing business opportunities for Opticslah, Yeak did not pursue such opportunities for PM&AM or even disclose such opportunities to PM&AM.

36.   On information and belief, during his employment at PM&AM, Yeak submitted one or more proposals to federal government agencies through the Small Business Innovation Research program on behalf of Opticslah.  Such proposals, whether or not awarded, are Developments pursuant to Yeak's Employment Agreement with PM&AM.

37.   On or around February 7, 2017, unbeknownst to PM&AM, Yeak, on behalf of Opticslah, submitted a proposal to the U.S. Department of Energy for a Phase I research grant.  The proposal was titled "Optical Vortices through Laser Beam Engineering for Remote Sensing Applications" (the "2017 Proposal").

_____
[1] http://www.opticslah.com/ (last visited August 30, 2020).

38.     On information and belief, Defendant Yeak's grant proposals contain and/or are based on PM&AM's trade secrets and Confidential Information concerning laser research and remote sensing.  For example, whereas PM&AM's Contract No. DE-SC0004311 with the Department of Energy sought to "combine optical emission spectroscopy with laser absorption spectroscopy (LAS) to investigate the plume dynamics of laser ablation plasmas from nanosecond, femtosecond laser pulses and optical filaments over a broad spectral range," Yeak's 2017 Proposal contained similar concepts such as "the advantages of nanosecond optical vortices for laser-induced breakdown spectroscopy where the characteristic emission spectrum may be enhanced at the detector."

39.     On or around June 12, 2017, unbeknownst to PM&AM, Opticslah procured the Phase I research grant from the U.S. Department of Energy.  The grant was awarded through Contract #DE-SC0017728.  The DOE Program Manager for Opticslah's Contract #DE-SC0017728 was also the Program Manager for PM&AM's Contract No. DE-SC0004311.

40.     On information and belief, Defendant Yeak also misrepresented to the government agencies the facts of his employment with Plaintiff PM&AM and certified to the Department of Energy that his primary employment was not with PM&AM.

41.     On information and belief, unbeknownst to PM&AM, Yeak continued to work and develop business for Opticslah, including the following government contracts:[2]

| U.S. Contract | Proposal Deadline | Award Start Date | Award Amount |
|---|---|---|---|
| DE-SC0017728 (Phase I) | Feb. 7, 2017 | June 12, 2017 | $150,000.00 |
| DE-SC0017728 (Phase II) | May 1, 2018 | Aug. 27, 2018 | $1,000,000.00 |
| HDTRA119P0031 | June 20, 2018 | Mar 7, 2019 | $155,000.00 |
| DE-SC0019855 | Feb. 25, 2019 | July 1, 2019 | $199,386.00 |

_____

[2] http://www.sbir.gov/ (last visited September 3, 2020).

8740303.1

- 11 -

42.     On or around July 22, 2019, unbeknownst to PM&AM, Yeak registered Opticslah as a foreign limited liability company with the Arizona Corporation Commission to transact business in the State of Arizona.

**E.     Yeak Misleads PM&AM So He Could Continue to Misappropriate for Opticslah Undetected.**

43.     Despite his contractual obligations, Yeak never disclosed to PM&AM that he had formed Opticslah or that he was seeking to obtain government research grants regarding remote sensing projects on behalf of an entity other than PM&AM.

44.     Instead, as PM&AM's remote-sensing contract was nearing the end and Yeak was supposed to be identifying additional follow-on government research funding opportunities, Yeak told PM&AM that, according to the DOE Program Manager on PM&AM's grant, the DOE had no interest in funding, and its collaborators had no interest in pursuing, such work.

45.     Shortly after PM&AM's remote sensing contract ended and just *a few weeks* after the U.S. Department of Energy awarded Opticslah the Phase I research grant for the 2017 Proposal, Yeak on June 29, 2017, suddenly told PM&AM that he wanted a "career change" and was going to leave PM&AM to become a patent lawyer.  Yeak said that he needed to leave PM&AM because he had to study for the patent bar, study for the LSAT, and apply to and then attend law school in order to pursue his dream career in patent law.  Yeak did not mention Opticslah or his newly-procured government contract.

46.     After telling PM&AM that he was leaving the company to pursue a career in patent law, on July 14, 2017, Yeak formally announced his resignation, effective July 28 2017, to pursue a "career change."  Yeak's resignation letter did not mention Opticslah or his newly-procured government research grant.

47.     Believing Yeak's representations that the government was not interested in funding additional remote-sensing work and that he was pursuing a legal career, PM&AM came to an arrangement that he could continue as a

PM&AM employee, first with reduced hours and then on an hourly basis so he would have flexibility to prepare for law school and take the patent bar while also continuing to work for PM&AM.

48.     Over the following two years, Yeak continued to be a PM&AM employee.  During the rest of 2017, Yeak performed work and also took accrued vacation time.  In 2017 and beyond, Yeak performed work for PM&AM.  He submitted weekly employee timesheets.  PM&AM continued to pay employment taxes and withhold social security, federal and state income taxes, and Medicare taxes from Yeak's compensation.  PM&AM continued to issue W-2 Forms to Yeak.  PM&AM believed Yeak was its employee.

49.     During the second half of 2017, throughout 2018, and into 2019, Yeak continued to access PM&AM's secure laboratory facility in Tucson, Arizona using his employee access code and keys.

50.     At the same time, Yeak continued to deceive PM&AM so it would continue, among other things, to provide Yeak with access to its trade secrets, Confidential Information, and facility, and so it would not get suspicious that Yeak was secretly developing for Opticslah the business it paid Yeak to develop for PM&AM.  For more than two years after he first informed PM&AM in 2017 that he wanted to visit law schools, study for the LSAT, and interview with law firms, Yeak continued to tell PM&AM that he was pursuing a career in law.

**F.     PM&AM Discovers Yeak's Unlawful Activities**

51.     In September 2019, Plaintiff PM&AM was attempting to locate certain laboratory notebooks the Defendant Yeak had used.  During Yeak's employment with PM&AM, Yeak recorded in these laboratory notebooks his day-to-day research activities, including experimental procedures, results, and other laboratory records.  These notebooks are the property of PM&AM.  As soon as it noticed that it was missing the laboratory notebooks, PM&AM began an investigation into its

1    employee, Yeak, and learned that he had been surreptitiously competing with

2    PM&AM.

3        52.    On December 19, 2019, Plaintiff PM&AM sent a letter to Yeak

4    terminating his employment.  In that letter, PM&AM requested that Yeak return all

5    PM&AM property, including the Developments whose entire rights and interests

6    were assigned to PM&AM in the Employment Agreement, and that Yeak disclose

7    to PM&AM all the Developments pursuant to the Employment Agreement.

8    PM&AM also provided written notice to Yeak pursuant to Section 9(b) of the

9    Employment Agreement, and asked that Yeak make the required payment within 30

10   days.

11       53.    Yeak has refused to provide information regarding the Developments,

12   including but not limited to the 2017 Proposal, make the payment owed to

13   PM&AM for his breaches of Section 9(a) of the Employment Agreement (as

14   required by Section 9(b)), or otherwise remediate his numerous breaches of the

15   Employment Agreement or violations of law.

16

17                          **<u>COUNT I</u>**

18                  **Misappropriation of Trade Secrets**

19       **under the Defend Trade Secret Act, 15 U.S.C. § 1836(b)**

20                      **(Against All Defendants)**

21       54.    PM&AM hereby re-alleges and incorporates by reference each and

22   every allegation contained in all the preceding paragraphs of this Complaint

23       55.    The above alleged facts constitute actual and threatened

24   misappropriation of PM&AM Trade Secrets by Defendants Yeak and Opticslah

25   under 18 U.S.C. §§ 1836 and 1839.

26       56.    At all times relevant to this Complaint, PM&AM owned the PM&AM

27   Trade Secrets because PM&AM was the entity in which rightful legal and equitable

28   title to the PM&AM Trade Secrets is reposed.

57.     The PM&AM Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

58.     The PM&AM Trade Secrets are related to and used in PM&AM's laser systems and related products and services offered for sale, sold, or intended for use in interstate commerce.

59.     PM&AM derives significant economic benefits from owning the PM&AM Trade Secrets.

60.     Defendants Yeak and Opticslah improperly acquired, appropriated, took, disclosed, used, carried away, copied, duplicated, transmitted, sent, communicated, or conveyed the PM&AM Trade Secrets for the benefit of Yeak and Opticslah.

61.     Defendants Yeak and Opticslah knew or had reason to know that the PM&AM Trade Secrets were acquired by improper means.

62.     Defendants Yeak and Opticslah have disclosed and used the PM&AM Trade Secrets without express or implied consent of Plaintiff PM&AM.

63.     Defendants Yeak and Opticslah used improper means to acquire knowledge of the PM&AM Trade Secrets.

64.     At the time of the disclosure or use of the PM&AM Trade Secrets, Defendant Yeak knew that he owed a duty to Plaintiff PM&AM to maintain their secrecy.

65.     At the time of the disclosure or use of the PM&AM Trade Secrets, Defendant Opticslah knew or had reason to know that the knowledge of the PM&AM Trade Secrets was derived from or through Yeak, who owed a duty to Plaintiff PM&AM to maintain the secrecy of the PM&AM Trade Secrets.

66.     Defendants Yeak and Opticslah performed such acts in furtherance of the trade secret misappropriation in at least Tucson, Arizona.

8740303.1

- 15 -

67.     Defendants Yeak and Opticslah intended to convert the PM&AM Trade Secrets for the economic benefit of one other than their owner Plaintiff PM&AM.

68.     Defendants Yeak and Opticslah knew and intended that Plaintiff PM&AM, as the owner of the PM&AM Trade Secrets, would be injured by their actions.

69.     As a result of Defendants Yeak's and Opticslah's misappropriation of the PM&AM Trade Secrets, Plaintiff PM&AM has suffered actual damages in an amount to be proven at trial.

70.     As a result of Defendants Yeak's and Opticslah's misappropriation, Yeak and Opticslah have been unjustly enriched.

71.     Upon information and belief, Defendants Yeak's and Opticslah's misappropriation of the PM&AM Trade Secrets was willful and malicious based on the facts alleged herein.  Yeak and Opticslah acted with a purpose and willingness to commit the acts alleged, and Yeak's and Opticslah's conduct was not reasonable under the circumstances.  Plaintiff PM&AM is therefore entitled to exemplary damages and attorney fees and costs.  PM&AM further seeks exemplary damages against Yeak and Opticslah in an amount up to two times the amount of PM&AM's actual damages according to proof under U.S.C. § 1836.

72.     The misappropriation of the PM&AM Trade Secrets has caused and will continue to cause Plaintiff PM&AM irreparable and substantial injury and therefore cannot be fully redressed through damages alone.

73.     If Defendants Yeak and Opticslah were permitted to continue to use the PM&AM Trade Secrets, Plaintiff PM&AM will be irreparably harmed and the economic damages to PM&AM will be difficult to quantify.  An injunction prohibiting Yeak and Opticslah from further acquisition, disclosure, use, and possession of the PM&AM Trade Secrets is necessary to provide PM&AM with complete relief.

74. Defendants Yeak's and Opticslah's wrongful conduct alleged herein by their misappropriation of PM&AM Trade Secrets will continue unless enjoined and restrained by this Court, and will cause great and irreparable injury to Plaintiff PM&AM's business, and it could cause Yeak and Opticslah to have improper advantages, positions, and rights in the marketplace to PM&AM's detriment. Absent injunctive relief, Yeak's and Opticslah's further use of PM&AM Trade Secrets would irreparably harm PM&AM.

## COUNT II

### Misappropriation of Trade Secret

### under the Arizona Uniform Trade Secrets Act, A.R.S § 44-401 et seq.

### (Against All Defendants)

75. Plaintiff PM&AM hereby realleges and incorporates by reference each and every allegation contained in all the preceding paragraphs of this Complaint.

76. The above alleged facts constitute actual and threatened misappropriation of Plaintiff PM&AM's Trade Secrets by Defendants Yeak and Opticslah under the Arizona Uniform Trade Secrets Act.

77. Plaintiff PM&AM further seeks exemplary damages against Yeak and Opticslah in an amount up to two times the amount of PM&AM's actual damages according to proof under A.R.S. § 44 403(B).

## COUNT III

### Breach of Contract:  Non-Disclosure of Confidential Information

### (Against Defendant Yeak)

78. Plaintiff PM&AM hereby realleges and incorporates by reference each and every allegation contained in all the preceding paragraphs of this Complaint.

79. The Employment Agreement is a valid contract between Yeak and PM&AM.

80.     Yeak has breached the Employment Agreement by using and disclosing PM&AM's Confidential Information for a purpose other than to perform work for PM&AM, without permission from PM&AM.

81.     Plaintiff PM&AM has been greatly and irreparably damaged as result of Yeak's breach of contract in an amount to be proven at trial, and is entitled to injunctive relief to prevent any further breaches and damage.

82.     Plaintiff PM&AM is also entitled to attorneys' fees arising from Defendant Yeak's breach of contract, including but not limited to fees available pursuant to A.R.S. § 12-341.01(A).

## COUNT IV
### Breach of Contract:  Developments
### (Against Defendant Yeak)

83.     Plaintiff PM&AM hereby re-alleges and incorporates by reference each and every allegation contained in all the preceding paragraphs of this Complaint.

84.     The Employment Agreement is a valid contract between Yeak and PM&AM.

85.     Defendant Yeak breached Section 4 of the Employment Agreement by refusing to disclose to PM&AM the Developments covered by the Section 4 of the Employment Agreement.  Such Developments include, but are not limited to, the 2017 Proposal, which according to the publicly-available abstract relates to the actual or expected business of PM&AM and/or relates to the activities of PM&AM. Also, the 2017 Proposal was made by Yeak during his employment at PM&AM. Nevertheless, Yeak has refused to provide the required disclosures regarding the 2017 Proposal or other Developments as required by Section 4 of the Employment Agreement.

86.     Plaintiff PM&AM has been greatly and irreparably damaged as result of Defendant Yeak's breach in an amount to be proven at trial, and is entitled to injunctive relief to prevent any further breaches and damage.

87.     Plaintiff PM&AM is also entitled to attorneys' fees arising from Defendant Yeak's breach of contract, including but not limited to fees available pursuant to A.R.S. § 12-341.01(A).

<u>COUNT V</u>

**Breach of Contract: Non-Compete**

**(Against Defendant Yeak)**

88.     Plaintiff PM&AM hereby realleges and incorporates by reference each and every allegation contained in all the preceding paragraphs of this Complaint.

89.     The Employment Agreement is a valid contract between Yeak and PM&AM.

90.     Sections 5 and 9(a) of the Employment Agreement restrict Yeak's ability to compete with PM&AM during his employment with PM&AM.  Yeak breached these obligations by engaging in activities on behalf of Opticslah during his employment at PM&AM and by failing to disclose to PM&AM business opportunities that he secretly pursued for Opticslah during his employment at PM&AM.

91.     Section 9(a) of the Employment Agreement also restricts Yeak's ability to compete with PM&AM for two years following his employment with PM&AM.  Yeak breached his post-employment non-compete obligations by engaging in activities on behalf of Opticslah following his employment with PM&AM.

92.     Plaintiff PM&AM has been greatly and irreparably damaged as result of Defendant Yeak's breach of contract.

93.     As a result of Yeak's breach of Section 9(a) of the Employment Agreement, PM&AM is entitled to liquidated damages pursuant to Section 9(b) of the Employment Agreement, in addition to any other available legal and equitable remedies.

94.     In its letter dated December 19, 2019, in accordance with Section 9(b) of the Employment Agreement, PM&AM provided Yeak with written notice of his breaches of Section 9(a) and advised Yeak of the amount due to PM&AM.

95.     Yeak did not issue payment to PM&AM within 30 days of PM&AM's December 19, 2019 letter.

96.     PM&AM satisfied conditions precedent set forth in Section 9(b) of the Employment Agreement.

97.     Plaintiff PM&AM is also entitled to attorneys' fees arising from Defendant Yeak's breach of contract, including but not limited to fees available pursuant to A.R.S. § 12-341.01(A).

## COUNT VI
### Breach of Duty of Loyalty
### (Against Defendant Yeak)

98.     Plaintiff PM&AM hereby re-alleges and incorporates by reference each and every allegation contained in all the preceding paragraphs of this Complaint.

99.     Defendant Yeak owed Plaintiff PM&AM a duty of loyalty not to compete with PM&AM during his employment.

100.    Defendant Yeak owed Plaintiff PM&AM a duty of loyalty not to misuse PM&AM's Trade Secrets and confidential information for his own benefit and not to disclose PM&AM's Trade Secrets and confidential information to third parties.

8740303.1

101. By virtue of these duties, Defendant Yeak was prohibited from acting in a disloyal manner or in any way inconsistent with that duty during his employment at PM&AM.

102. Defendant Yeak breached his duty of loyalty by, among other things, competing with PM&AM during his employment at PM&AM, by diverting business opportunities from PM&AM to Opticslah during his employment at PM&AM, and using and disclosing PM&AM's confidential information for his benefit and for Opticslah's benefit.

103. Defendant Yeak's misconduct was intentional and outrageous and committed with the purpose of causing injury to, or in reckless disregard of harm to Plaintiff PM&AM in order the serve his own interests.

104. As a direct and proximate result of the foregoing breaches of the duty of loyalty, Plaintiff PM&AM has been damaged in amounts to be determined at trial.

105. As a direct and proximate result of the foregoing breaches of the duty of loyalty, Plaintiff PM&AM has suffered and will continue to suffer irreparable harm to its competitive position in the business of laser products and services, its customer and collaborator relationships, its economic expectancies, its business reputation, and its goodwill.

106. Because Defendant Yeak has been unjustly enriched by his misconduct at Plaintiff PM&AM's expense, PM&AM is entitled to the imposition of a constructive trust for all proceeds that Yeak has directly and indirectly derived from his misconduct.

107. Plaintiff PM&AM is also entitled to disgorge Defendant Yeak of his earnings from PM&AM during his periods of disloyalty to PM&AM.

108. Upon information and belief, Defendant Yeak acted with an evil mind and his actions were intentional, willful, malicious, outrageous, unjustified, and in bad faith to such a degree as to entitle Plaintiff PM&AM to punitive damages.

1

2 **COUNT VII**

3 **Fraud**

4 **(Against Defendant Yeak)**

5     109.  Plaintiff PM&AM hereby re-alleges and incorporates by reference

6 each and every allegation contained in all the preceding paragraphs of this

7 Complaint.

8     110.  Prior to the 2017 solicitation deadline, Defendant Yeak represented to

9 Plaintiff PM&AM that government funding agencies were not interested in funding

10 further remote-sensing research contracts.

11     111.  These representations made by Defendant Yeak were false.  The 2017

12 Proposal, which Opticslah was awarded, is a remote-sensing research contract.

13 These representations made by Defendant Yeak were material to Plaintiff PM&AM

14 in deciding whether to pursue follow-on contracts with government funding

15 agencies for remote-sensing research.  Plaintiff PM&AM relied on, and was

16 justified in relying on, the representations made by Defendant Yeak, given Yeak's

17 role at PM&AM regarding remote-sensing work.

18     112.  Beginning in June 2017, Defendant Yeak represented to Plaintiff

19 PM&AM that he was pursuing a career in patent law.  These representations made

20 by Defendant Yeak were false.  At the time the representations were made, Yeak

21 was working on behalf of Opticslah.  PM&AM relied on, and was justified in

22 relying on, the representations made by Yeak, given Yeak's employment

23 relationship with PM&AM.

24     113.  At the time the representations were made, Defendant Yeak knew they

25 were false.  The representations were made with the intent of diverting business

26 away from Plaintiff PM&AM to himself and Defendant Opticslah, while preserving

27 his access to PM&AM's secure facilities and computer systems so he could

28 continue to misappropriate the PM&AM Trade Secrets and Confidential

8740303.1

- 22 -

1    Information and ensure that PM&AM would not investigate remote-sensing

2    contract opportunities, suspect he had breached the Employment Agreement or

3    other obligations he owned to PM&AM, or detect Yeak's real business activities

4    for Opticslah.  Yeak knew PM&AM would rely on his representations, and act

5    upon them in a manner reasonably contemplated.  Yeak's representations were

6    intentional and outrageous and made with the purpose of causing injury to, or in

7    reckless disregard of harm to PM&AM in order the serve his own interests

8            114.   PM&AM was ignorant as to the falsity of the representations when

9    they were made by Yeak.

10           115.   As the direct and proximate result of Defendant Yeak's actions,

11   Plaintiff PM&AM has been damaged in amounts to be determined at trial.

12           116.   As a direct and proximate result of Defendant Yeak's actions, Plaintiff

13   PM&AM has suffered and will continue to suffer irreparable harm to its

14   competitive position in the business of laser products and services, its customer and

15   collaborator relationships, its economic expectancies, its business reputation, and its

16   goodwill.

17           117.   Because Defendant Yeak has been unjustly enriched by his fraud at

18   PM&AM's expense, PM&AM is entitled to the imposition of a constructive trust

19   for all proceeds that Yeak has directly and indirectly derived from his misconduct.

20           118.   Plaintiff PM&AM is also entitled to disgorge Defendant Yeak of his

21   earnings from PM&AM during his periods of committing fraud upon his employer

22   PM&AM.

23           119.   Upon information and belief, Defendant Yeak acted with an evil mind

24   and his actions were intentional, willful, malicious, outrageous, unjustified, and in

25   bad faith to such a degree as to entitle Plaintiff PM&AM to punitive damages.

26

27

28

8740303.1

## COUNT VIII

### Conversion

### (Against All Defendants)

120.   Plaintiff PM&AM hereby re-alleges and incorporates by reference each and every allegation contained in all the preceding paragraphs of this Complaint.

121.   Yeak created Developments that are PM&AM's property and have been assigned to PM&AM pursuant to Section 4 of the Employment Agreement. Such Developments include, but are not limited to, the 2017 Proposal.

122.   The laboratory notebooks that Yeak used are also PM&AM's property, provided by PM&AM for Yeak's use during his employment to record research and developments in the course of his employment.

123.   Defendants Yeak and Opticslah converted such Developments and other PM&AM property, including the PM&AM Trade Secrets and Confidential Information, by failing to disclose to PM&AM, wrongfully retaining, passing on, and/or using the Developments, information, and other PM&AM property without PM&AM's authorization.

124.   Defendants Yeak and Opticslah converted the laboratory notebooks and the information and intellectual property contained therein, by wrongfully taking, retaining, passing on, and/or using the laboratory notebooks and the information and intellectual property contained therein without PM&AM's authorization.

125.   Defendant Yeak interfered with Plaintiff PM&AM's possession and use of its property, in particular, by withholding the Developments from PM&AM, refusing to disclose the Developments upon PM&AM's request, converting the PM&AM Developments to his and Defendant Opticslah's use.

126.   Defendant Yeak also interfered with Plaintiff PM&AM's possession and use of its property, in particular, by taking the laboratory notebooks PM&AM,

1   refusing to return them upon request, and converting them to his and Defendant

2   Opticslah's use.

3       127.   Defendant Opticslah interfered with Plaintiff PM&AM's possession

4   and use of its property, in particular, by converting the PM&AM Developments,

5   trade secrets and Confidential Information, acquired unlawfully through Defendant

6   Yeak, to its and Yeak's use.

7       128.   Defendant Opticslah also interfered with Plaintiff PM&AM's

8   possession and use of its property, in particular, by converting the laboratory

9   notebooks and the information and intellectual property contained therein, acquired

10  unlawfully through Defendant Yeak, to its and Yeak's use.

11      129.   PM&AM had the right to possession and ownership of such

12  Developments, information, laboratory notebooks, and other PM&AM property at

13  the time of its conversion.

14      130.   Plaintiff PM&AM did not consent in any manner to Defendants

15  Yeak's and Opticslah's conversion.

16      131.   Defendant Opticslah, as the principal responsible to the acts of its

17  agent Defendant Yeak, is vicariously liable to Plaintiff PM&AM for the harm

18  caused to PM&AM as a result of Yeak's conversion of PM&AM's Developments.

19      132.   As a direct and proximate result of Defendants' interference with

20  Plaintiff PM&AM's possession and use of its property, PM&AM has been

21  damaged, and Yeak and Opticslah have been unjustly enriched, in amounts to be

22  determined at trial.

23      133.   Defendants' misconduct was of such a degree as to entitle PM&AM

24  punitive or exemplary damages from Defendants.

25

26

27

28

8740303.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT IX

### Tortious Interference with Contract

### (Against Defendant Opticslah)

134.   Plaintiff PM&AM hereby re-alleges and incorporates by reference each and every allegation contained in all the preceding paragraphs of this Complaint.

135.   The Employment Agreement is a valid contract between Yeak and PM&AM.

136.   Defendant Opticslah knew about the Employment Agreement.

137.   Despite Opticslah's knowledge of Yeak's obligations set forth in the Employment Agreement, Opticslah induced Yeak to breach the Employment Agreement and/or allowed him to do so, through Yeak's employment at Opticslah while he was employed by PM&AM, by employing Yeak in a position after his employment at PM&AM that would cause him to violate his non-compete obligations, by using the trade secrets and Confidential Information that Yeak misappropriated from PM&AM, and by allowing Yeak to fail to disclose to PM&AM the Developments covered by Section 4 of the Employment Agreement.

138.   Opticslah's conduct in inducing Yeak's breaches of the Employment Agreement was illegal and improper and unlawfully interfered with Yeak's Employment Agreement.

139.   As a result of Opticslah's actions, PM&AM has been damaged, and Yeak and Opticslah have been unjustly enriched, in amounts to be determined at trial.

8740303.1

1

2

3

## COUNT X

### Tortious Interference with Business Expectancy

### (Against All Defendants)

4      140.    Plaintiff PM&AM hereby re-alleges and incorporates by reference

5   each and every allegation contained in all the preceding paragraphs of this

6   Complaint.

7      141.    Defendants Yeak and Opticslah had knowledge of Plaintiff PM&AM's

8   contracts and relationships with its customers, including inter alia, the Department

9   of Energy and the Department of Defense, and PM&AM's expectancy that its

10  customers would purchase PM&AM products and services.

11     142.    Plaintiff PM&AM's customers have been with PM&AM for many

12  years and PM&AM has invested substantial resources in maintaining the

13  relationships.

14     143.    Despite Defendant Yeak's knowledge of his employment obligations,

15  Yeak interfered with Plaintiff PM&AM's contracts or its business expectancies, by

16  misappropriating PM&AM's trade secrets, breaching his Employment Agreement

17  and duty of loyalty, committing fraud upon PM&AM, converting PM&AM's

18  property, and unfairly competing with PM&AM.

19     144.    Defendant Opticslah interfered with Plaintiff PM&AM's contracts or

20  its business expectancies by misappropriating PM&AM's trade secrets, converting

21  PM&AM's property, and unfairly competing with PM&AM.

22     145.    As a result of Defendants Yeak's and Opticslah's actions, PM&AM

23  has been damaged, and Yeak and Opticslah have been unjustly enriched, in

24  amounts to be determined at trial.

25

26

27

28

8740303.1

1

## COUNT XI

2

### Unfair Competition

3

### (Against All Defendants)

4       146.   Plaintiff PM&AM hereby re-alleges and incorporates by reference

5   each and every allegation contained in all the preceding paragraphs of this

6   Complaint.

7       147.   Defendants Yeak and Opticslah are engaged in the market for laser

8   systems and related products and services, in competition with Plaintiff PM&AM.

9       148.   Defendants Yeak and Opticslah have unfairly competed with Plaintiff

10   PM&AM by undertaking a deliberate plan of committing fraud upon PM&AM and

11   misappropriating PM&AM's confidential and trade secret information in the

12   research, development, and application of laser systems for the commercial benefit

13   of and the exploitation by Yeak and Opticslah, in order to place on the market laser

14   systems and related products and services, competitive with those of PM&AM, and

15   having an immediate marketability and salability which they would not have were it

16   not for Yeak's and Opticslah's acts of fraud and misappropriation of PM&AM

17   trade secrets and confidential information and the aforesaid wrongful breach of

18   contractual and fiduciary obligations to PM&AM, wherefore Yeak's and

19   Opticslah's actions constitute unfair competition against PM&AM which has

20   resulted in substantial and irreparable damage to PM&AM.

21

22

## COUNT XII

23

### Unjust Enrichment

24

### (Against All Defendants)

25       149.   Plaintiff PM&AM hereby re-alleges and incorporates by reference

26   each and every allegation contained in all the preceding paragraphs of this

27   Complaint.

28

150.   Defendants Yeak and Opticslah wrongfully acquired and used Plaintiff PM&AM's confidential and proprietary information.  Yeak and Opticslah used PM&AM's confidential and proprietary information to gain an unfair competitive advantage in the marketplace to PM&AM detriment.

151.   Under these circumstances, it would be unjust for Defendants Yeak and Opticslah to retain their ill-gotten profits from the unlawful activities.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff PM&AM prays that:

1.   Defendants Yeak and Opticslah, and each of their agents, servants, employees, attorneys, and all others holding by or through them, or controlled by them, or controlling them, or in active concert or participation with them, be enjoined and restrained from:

(a)   further use and/or disclosure of Plaintiff PM&AM's trade secrets and confidential information;

(b)   doing any act or thing in breach of the employment agreement between PM&AM and its former employee;

(c)   doing any other act or thing calculated to, tending to, or likely to unfairly compete with PM&AM.

2.   Defendants Yeak and Opticslah be ordered to return all PM&AM property and any material embodying the PM&AM Trade Secrets and Confidential Information.

3.   Defendant Yeak be ordered to perform his obligation of disclosing the Developments to PM&AM pursuant to the Employment Agreement.

4.   Defendants Yeak and Opticslah be ordered to transfer ownership of all right, title and interest in patents and other intellectual property improperly based on or derived from the trade secrets misappropriated by Yeak and Opticslah from Plaintiff PM&AM.

8740303.1

5.      Defendants Yeak and Opticslah be required, jointly and severally, as trustees *ex maleficio* for Plaintiff PM&AM, to account for and pay over to PM&AM all damages suffered by PM&AM and all profits wrongfully derived by Yeak and Opticslah as a result of their breach of confidential relationship, misappropriation of trade secrets, breach of contract, conversion, and unfair competition.

6.      Defendant Yeak be disgorged of his earnings from Plaintiff PM&AM.

7.      Plaintiff PM&AM be awarded damages in an amount to be proven at trial, liquidated damages pursuant to the Employment Agreement, exemplary damages for misappropriate of trade secrets under 18 U.S.C. § 1836(b)(3)(C) and A.R.S. § 44-403(B), and punitive damages.

8.      Defendants Yeak and Opticslah be required to pay the cost of this action, together with Plaintiff PM&AM's reasonable attorneys' fees and disbursements incurred herein, including but not limited to fees available pursuant to 18 U.S.C. § 1836(b)(3)(D), and A.R.S. § 12-341.01(A).

9.      Plaintiff PM&AM have such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff PM&AM hereby demands a trial by jury on all issues triable to a jury pursuant to Federal Rule of Civil Procedure 38(b).

8740303.1

1    **<u>VERIFICATION</u>**

2         I, Kevin Kremeyer, verify that the facts alleged in this Complaint are true,

3    except those items based on "information and belief," which are believed to be true.

4    _____

5    Kevin Kremyer

6    Chief Executive Officer and Vice-President of Research
     **Physics, Materials, and Applied Mathematics Research, L.L.C.**

7

8

9

10

11

12

13                                                    Dated: September 3, 2020
                                                      Respectfully submitted,
14

15   _____

16   Erik J. Stone, Arizona Bar No. 02780

17   **JONES, SKELTON & HOCHULI, P.L.C.**

18   40 North Central Avenue, Suite 2700
     Phoenix, AZ 85004
19   Telephone: (602) 263-7309

20   Fax: (602) 200-7875
     Email: estone@jshfirm.com
21

22   Paul Sharer                          Joanne R. Bush
     *(pro hac vice* forthcoming)         *(pro hac vice* forthcoming)
23   **JONES DAY**                        **JONES DAY**

24   51 Louisiana Avenue, N.W.            717 Texas, Suite 3300
     Washington, D.C. 20001-2113          Houston, Texas 77002
25   Telephone: (202) 879-5481            Telephone: (832) 239-3782

26   Fax: (123) 626-1700                  Fax: (832) 239-3600
     Email: psharer@jonesday.com          Email: jrbush@jonesday.com
27

28   *Attorneys for Plaintiff*

8740303.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **VERIFICATION**

I, Kevin Kremeyer, verify that the facts alleged in this Complaint are true, except those items based on "information and belief," which are believed to be true.

Kevin Kremeyer
Chief Executive Officer and Vice-President of Research
**Physics, Materials, and Applied Mathematics Research, L.L.C.**

Dated: September 3, 2020
Respectfully submitted,

Eric J. Stone, Arizona Bar No. 027805
**JONES, SKELTON & HOCHULI, P.L.C.**
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004
Telephone: (602) 263-7309
Fax: (602) 200-7875
Email: estone@jshfirm.com

Paul Sharer
*(pro hac vice* forthcoming)
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-5481
Fax: (123) 626-1700
Email: psharer@jonesday.com

Joanne R. Bush
*(pro hac vice* forthcoming)
**JONES DAY**
717 Texas, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3782
Fax: (832) 239-3600
Email: jrbush@jonesday.com

*Attorneys for Plaintiff*