1    **WO**

2

3                    **IN THE UNITED STATES DISTRICT COURT**

4                      **FOR THE DISTRICT OF ARIZONA**

5

6    Physics, Materials, and Applied Mathematics     No. CV-20-00379-TUC-JCH
     Research LLC,

7                                                    **ORDER**
                    Plaintiff,

8
     v.
9
     Jeremy Yeak, et al.,
10
                    Defendants.
11

12          Plaintiff Physics, Materials, and Applied Mathematics Research, L.L.C.

13   ("PM&AM"), brought this action alleging *inter alia* misappropriation of trade secrets

14   under federal and state statutes and related claims. (Doc. 1.) Defendants Jeremy Yeak

15   ("Yeak") and Opticslah, L.L.C. ("Opticslah") (collectively "Defendants") move to dismiss

16   pursuant to Fed. R. Civ. P. 12(b)(7) ("Motion"), arguing that Plaintiff failed to join the

17   United States, an indispensable party to this suit.[1] (Doc. 72.) PM&AM opposes the Motion.

18   (Doc. 75.) The Court held oral argument on August 4, 2022. (*See Physics, Materials, and*

19   *Applied Mathematics Research LLC v. Yeak et al.*, 4:20-CV-00379-TUC-JCH (D. Ariz.

20   August 4, 2022), Hr'g Tr. at 2:4 (hereinafter "Hr'g Tr.").) The Court denies the Motion.

21   **I.    FACTUAL AND PROCEDURAL BACKGROUND**

22          PM&AM is a limited liability company, principally located in Tucson, Arizona,

23   specializing in applied research involving high intensity laser systems, ultrashort pulse

24   lasers, laser-guided electric discharge, standoff material detection including laser induced

25   breakdown spectroscopy and laser absorption spectroscopy, laser marking, and material

26   processing. (Doc. 1 at ¶¶ 6, 13.) Through conducting business and extensive research and

27   ────────────────────────────
     [1] Previously, Defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) for failure
28   to state a claim upon which relief can be granted.  (Doc. 8.)  On May 3, 2021, the Court
     dismissed the unjust enrichment claim (Count XII) as to Defendant Yeak but denied the
     motion as to all other claims.  (Doc. 16.)

1    development activities, PM&AM has developed proprietary and confidential information

2    with respect to these technologies.  (*Id.* at ¶ 14.)  PM&AM has taken measures and adopted

3    practices to protect such confidential information.  (*Id.* at ¶ 15.)

4            In 2009, PM&AM hired Yeak. (*Id.* at ¶ 16.) The parties entered into an Employment

5    Agreement (the "Employment Agreement"), dated December 30, 2013, which sets forth

6    covenants restricting confidential information disclosure, prohibiting outside employment

7    or business activities, and securing rights, titles, and interests in developments related to

8    PM&AM's actual or expected business or activities. (Doc. 1 at ¶ 17; *See* Doc. 1-2.) Yeak

9    indicated that he had no unpatented inventions made or conceived prior to his employment

10   at PM&AM. (Doc. 1 at ¶ 21.) During his employment with PM&AM, Yeak accessed

11   PM&AM's confidential information and trade secrets and helped advance PM&AM's

12   remote-sensing laser systems. (*Id.* at ¶¶ 25–30.)

13           Without PM&AM's knowledge, Yeak incorporated Opticslah with the New Mexico

14   Secretary of State in June 2015. (*Id.* at ¶ 31.) Yeak is Opticslah's statutory agent and sole

15   member. (*Id.* at ¶¶ 8, 31.) Opticslah claims expertise in solid-state laser development,

16   optical emission, and absorption spectroscopy techniques. (*Id.* at ¶ 32.)  In September 2019,

17   PM&AM discovered Opticslah's existence, and in December 2019, PM&AM terminated

18   Yeak citing breach of his Employment Agreement. (*Id.* at ¶¶ 51–52.)

19           In 2014, while Yeak was still employed by PM&AM, the U.S. Department of

20   Energy ("DOE") awarded PM&AM a Small Business Innovation Research ("SBIR")

21   grant[2] for "Filament-Based Laser-Induced Breakdown Spectroscopy for the Standoff

22   Detection of Radiological Materials." (*Id.* at ¶ 28.) Yeak was the principal investigator on

23   the grant and the primary liaison between PM&AM and DOE. (*Id.* at ¶¶ 28–29.) As the

24   remote-sensing grant was nearing its end, Yeak allegedly told PM&AM that the DOE was

---

25   [2] Agencies participating in the SBIR program award funding to small business applicants
26   to perform research and development and to stimulate technological innovation.
     https://www.sbir.gov/sites/default/files/SBA_SBIR_Overview_March2020.pdf.   Certain
     agencies, like the Department of Defense ("DOD"), enter into binding contracts with the
27   recipients and set out plans, protocols and requirements. *Id.* Other agencies, like the DOE,
     are granting agencies, which award grants with greater flexibility that are led by the
28   recipient. *Id.* Therefore, in this Order the terms "contract" and "grant" are used
     interchangeably.

1  no longer interested in funding additional remote-sensing research. (*Id.* at ¶¶ 44, 47.) But

2  in February 2017, Yeak, on behalf of Opticslah, submitted a SBIR grant proposal to DOE,

3  to perform similar research as that in PM&AM's remote-sensing grant; the grant was

4  procured in June 2017. (*Id.* at ¶¶ 37–39.)

5       Opticslah applied for additional government contracts on the following dates: May

6  1, 2018; June 20, 2018; and February 25, 2019. (*Id.* at ¶ 41.) Throughout this time, Yeak

7  continued to work for and access PM&AM's secure laboratory facility in Tucson, Arizona,

8  and, according to PM&AM, continued to misrepresent facts about his employment to

9  government agencies. (*Id.* at ¶¶ 40, 47–48.) In total, Opticslah has obtained twelve SBIR

10  grants or contracts with federal agencies and three are currently active.[3] (Doc. 77-1 at 7,

11  30.)

12       On September 3, 2020, PM&AM sued Defendants and raised twelve claims

13  including: (I) trade secret misappropriation pursuant to the Defend Trade Secrets Act

14  ("DTSA"), 18 U.S.C. § 1836 *et seq.*; (II) trade secret misappropriation pursuant to the

15  Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. § 44-401 *et seq.*; (III) contract

16  breach: confidential information disclosure; (IV) contract breach: failure to disclose

17  developments; (V) contract breach: non-compete; (VI) breach of duty of loyalty;

18  (VII) fraud; (VIII) conversion; (IX) tortious interference with contract; (X) tortious

---

[3] The three active grants or contracts are: Contract No. HDTRA121C0015; Contract No. DE-SC0021964; and Contract No. DE-SC0021919. (Doc. 72 at 5; Doc. 72-1.) Contract No. HDTRA121C0015, regarding "A Compact and Fast Long-Wave Infrared (LWIR) Spectroscopy System for Aerosol Combustion," is a Phase II SBIR contract with the U.S. Department of Defense ("DOD") worth $1,006,154.80, and is set to expire January 20, 2023. (Doc. 72-1 at 2; Doc. 77-1 at 7.) Contract No. DE-SC0021964, regarding "High Precision Broadband Optical Spectrometer for Nuclear Forensics," is a Phase I SBIR grant from the DOE worth $200,000. (Doc. 72-1 at 2.) This contract is set to expire on June 27, 2022, although a DOE program manager has issued a non-binding concurrence on a request for a six-month extension. (Doc. 77 at 2–3; Doc. 77-1 at 30.) Contract No. DE-SC0021919, regarding "High Precision Broadband Optical Spectrometer for Molten Salt Reactors," is also a Phase I SBIR grant from the DOE worth $200,000 which is set to expire on June 27, 2022. (Doc. 72-1 at 2.) Opticslah has submitted a proposal for a Phase II award that would effectively extend this contract, with a decision expected in July or August 2022. (Doc. 72 at 6.)

     Opticslah has received eight other Phase I SBIR or Small Business Technology Transfer ("STTR") grants or contracts from the DOE, DOD, and Environmental Protection Agency ("EPA"), one of which the DOE renewed as a Phase II contract. (Doc. 72-1 at 2–3.) All nine contracts are now expired and inactive.
*See id.*; *see also* https://www.sbir.gov/sbirsearch/award/all?firm=opticslah&topic=.

1    interference with business expectancy; (XI) unfair competition; and (XII) unjust
2    enrichment. (Doc. 1 at ¶¶ 54–151.) Defendants moved to dismiss the action under Fed. R.
3    Civ. P. 12(b)(6). (Doc. 8.) On May 3, 2021, the Court dismissed the unjust enrichment
4    claim against Yeak but denied the motion as to all other claims. (Doc. 16 at 16.)

5          On May 11, 2022, Defendants filed this successive Motion to Dismiss. (Doc. 72.)
6    Defendants argue that the Court must dismiss this action because Plaintiff has failed to join
7    the United States as an indispensable party to the litigation. (*Id.* at 1.) Defendants further
8    contend that the subject matter in this action, PM&AM's alleged trade secrets, threaten
9    Opticslah's contracts with the DOE and DOD. (*Id.* at 2.) As such, the United States'
10   contractual interests and national security interests are implicated, such that this action
11   cannot continue in its absence. (*Id.* at 3.)

12   **II.    LEGAL STANDARD – DISMISSAL UNDER RULE 12(B)(7)**

13        **A.        Required Party Under Rule 19(a)**

14         Rule 19 requires that a court conduct a three-step analysis to determine whether an
15   absent person, or party, is required. *Dawavendewa v. Salt River Project Agr. Imp. and*
16   *Power Dist.*, 276 F.3d 1150, 1154–55 (9th Cir. 2002). First, a court evaluates whether the
17   absent person is required or necessary to the action. A person may be necessary in three
18   different ways: (1) under Rule 19(a)(1)(A), if "in that person's absence, the court cannot
19   accord complete relief among [the] existing parties"; or (2) under Rule 19(a)(1)(B)(i), if
20   that person claims an interest in the action and a decision issued in its absence may "impair
21   or impede [its] ability to protect the interest"; or (3) under Rule 19(a)(1)(B)(ii), if that
22   person claims an interest in the action and a decision issued in its absence may "leave an
23   existing party subject to a substantial risk of incurring double, multiple, or otherwise
24   inconsistent obligations." If the party is found to be necessary, the court next determines
25   whether joinder is feasible. Finally, if joinder is not feasible, the court evaluates whether
26   "equity and good conscience" require that the litigation proceed among the existing parties.
27   Fed. R. Civ. P. 19(b). In determining whether equity and good conscience require that the
28   litigation proceed, the court considers the four Rule 19(b) factors. Whether a lawsuit will

1   be dismissed under Rule 19 can only be determined in the particular litigation's context.

2   *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968). The

3   inquiry is practical and fact-specific, designed to avoid the rule's rigid application leading

4   to harsh results.  *Dawavendewa*, 276 F.3d at 1154. "The moving party has the burden of

5   persuasion in arguing for dismissal." *Shermoen v. United States.*, 982 F.2d 1312, 1317 (9th

6   Cir. 1992) (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)).

7   **1.  Rule 19(a)(1)(A) – Complete Relief**

8        Complete relief refers to comprehensive, meaningful relief among the existing

9   parties, "rather than partial or hollow relief." *Disabled Rts. Action Comm. v. Las Vegas*

10   *Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) (quoting *Northrop Corp. v. McDonnell*

11   *Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)). When a plaintiff seeks damages,

12   complete relief can be accorded among existing parties if the plaintiff can recover all

13   damages sought from the existing defendant(s). *Ward v. Apple Inc.*, 791 F.3d 1041, 1049

14   (9th Cir. 2015). Alternatively, when a plaintiff seeks injunctive relief, complete relief

15   cannot be accorded if an absent third party would not be bound by the proposed injunction,

16   thereby preventing the injunction's intended result with respect to the plaintiff.

17   *Dawavendewa*, 276 F.3d at 1156–57; *see Confederated Tribes of Chehalis Indian Rsrv. v.*

18   *Lujan*, 928 F.2d 1496 (9th Cir. 1991).

19   **2.  Rule 19(a)(1)(B) –Legal Interests and Inconsistent Obligations**

20        Joinder under Rule 19(a)(1)(B) requires non-parties to claim a legally protected

21   interest in the action. *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1204 (9th Cir. 2020).

22   When the non-party maintains a neutral, disinterested posture towards a dispute, they have

23   not claimed an interest. *Northrop Corp*, 705 F.2d at 1043–44.

24        Whether an interest is legally protected is a practical and fact-specific inquiry

25   conducted within wide boundaries; the interest need not be a due process clause property

26   interest, but it must be more than a financial stake, and more than speculation about a future

27   event. *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547

28   F.3d 962, 970 (9th Cir. 2008). The specific interest the absent party claims must be

1   identified. *Ward*, 791 F.3d at 1053. In some circumstances, an absent party's contract rights

2   may give rise to a legally protected interest. (*Id.*) For example, in actions to "set aside" or

3   "decimate" a contract, parties to *that* contract are required parties to the action.

4   *Dawavendewa*, 276 F.3d at 1157; *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th

5   Cir. 1975). An interest arising from terms in a bargained contract must be substantial and

6   absent parties are not necessarily required when their contract rights are merely implicated.

7   *Ward*, 791 F.3d at 1053.

8       If the party is found to be necessary under Rule 19(a)(1)(A) or Rule 19(a)(1)(B) the

9   court next determines whether joinder is feasible. Generally, joinder is feasible when the

10  absent party "is subject to service of process" and joining the absent party "will not deprive

11  the court of subject matter jurisdiction." Fed. R. Civ. P. 19(a)(1). However, the United

12  States and other sovereign entities, such as federally recognized Native American tribes,

13  typically are immune from suit and cannot be joined unless they expressly waive that

14  immunity. *See Dawavendewa*, 276 F.3d at 1159.

15  **B. Rule 19(b) - Indispensable Party**

16      When the court determines that an absent party is a required party and joinder is not

17  feasible, the next step in the court's analysis is to determine whether: (1) "the action should

18  proceed among the existing parties" or (2) the required party is indispensable to the action,

19  such that "in equity and good conscience, the action…should be dismissed." Fed. R. Civ.

20  P. 19(b).  Rule 19(b) provides four factors for consideration:

21

22          (1) the extent to which a judgment rendered in the person's
            absence might prejudice that person or the existing parties;
23          (2) the extent to which any prejudice could be lessened or
            avoided by:
24                  (A) protective provisions in the judgment;
25                  (B) shaping the relief; or
                    (C) other measures;
26          (3) whether a judgment rendered in the person's absence would
            be adequate; and
27          (4) whether the plaintiff would have an adequate remedy if the
28          action were dismissed for nonjoinder.

1    *Id.* Rule 19(b) is based on equitable considerations and analyses must be tailored to the

2    specific facts. *Republic of Phillipines v. Pimentel*, 553 U.S. 851, 862–63 (2008).

3    **III.   ANALYSIS**

4          **A. Required Party Under Rule 19(a)**

5          Defendants make two arguments that the United States is a required party under

6    Rule 19(a). (Doc. 72 at 9.) First, they argue that the injunction Plaintiff seeks will prevent

7    Opticslah's performance under its active contracts with the DOD and DOE. (*Id.*) Second,

8    they argue that under *Dawavendewa* and *Lomayaktewa*, the United States is a required

9    party because parties to contracts are "indispensable to litigation seeking to decimate

10   th[ose] contract[s]." (Doc. 72 at 7–8.) Defendants also cite *Ward* to support these

11   arguments, claiming that a party to a contract is a required party when the litigation seeks

12   to set aside the contract or when relief sought may prevent a defendant from fulfilling

13   substantial contractual obligations to an absent party. (Doc. 72 at 6–7.)

14         **1.   Complete Relief is Available**

15         Plaintiff seeks both damages and an injunction preventing Defendants from further

16   misuse of trade secrets and further breach of the Employment Agreement. (Doc. 72 at 3–

17   4.)  With respect to damages, complete relief is possible when a plaintiff can recover all

18   damages from existing defendants. *Ward*, 791 F.3d at 1049; *Roberts*, 947 F.3d at 1204–05.

19   Here, Plaintiff only seeks to recover damages from Defendants in relation to Defendants'

20   actions. (*See generally* Doc. 1.) Therefore, all monetary relief may be accorded in the

21   United States' absence. In their Reply to Plaintiff's Opposition, Defendants argue that the

22   Court cannot grant injunctive relief to Plaintiff because Plaintiff's alleged trade secrets may

23   implicate Opticslah's ongoing SBIR research contracts with the United States.  (Doc. 77 at

24   3.) This reasoning misapprehends the case law.

25         In *Dawavendewa*, the defendant, a power generating facility, initiated a hiring

26   preference for Navajo Nation ("Nation") tribal members as required by the terms of its

27   land-lease with the absent party, the Nation. *Dawavendewa*, 276 F.3d at 1153. The plaintiff

28   sued, challenging the hiring policy's legality and seeking injunctive relief, both to obtain

1    employment with the defendant and to invalidate the hiring preference. (*Id.* at 1155.)

2    Because the Nation would not be bound by any injunctive relief granted in federal court, a

3    judgment for plaintiff would leave the defendant with two options: (1) comply with the

4    injunction, in which case the Nation could enforce the lease in tribal court and potentially

5    terminate it; or (2) ignore the injunction and continue to follow the hiring policy. (*Id.* at

6    1155–56.) The plaintiff could not obtain the relief sought in either situation, consequently,

7    the Nation was a required party under Rule 19(a)(1)(A). (*Id.* at 1156.)

8            In *Disabled Rights*, a disabled rights advocacy organization sought an injunction to

9    prevent the defendants from conducting a rodeo until defendants brought the rodeo venue,

10   which they were leasing, into compliance with the Americans with Disabilities Act

11   ("ADA"). *Disabled Rts. Action Comm.*, 375 F.3d at 865–67. The court held that complete

12   relief could be accorded in the venue-owner's absence because meaningful remedies that

13   did not require the owner's cooperation were available, such as requiring the defendants

14   "to make the rodeo accessible to the degree possible within the scope of the lease," or to

15   hold the rodeo at an ADA-compliant venue. (*Id.* at 880.) Therefore, the venue-owner was

16   not a required party under Rule 19(a)(1)(A). (*Id.*)

17           In this case, the circumstances are more in line with *Disabled Rights* than

18   *Dawavendewa*. Plaintiff seeks to enjoin Defendants from engaging in further

19   misappropriation of trade secrets and further breach of the Employment Agreement. (Doc.

20   75 at 3–4.)  The complaint seeks to enjoin only the Defendants' actions, not any actions by

21   the United States. *Disabled Rights*, 735 F.3d at 879; *Alto v. Black*, 738 F.3d at 1126 (noting

22   that complete injunctive relief may be impossible where the injury sustained resulted from

23   the absent party's action); *see* Doc. 1 at 29–30. This meaningful relief "would be available

24   with or without [the United States'] participation."  *See Disabled Rights*, 735 F.3d at 880.

25   If compliance with the potential injunction would cause Defendants to be unable to fulfill

26   their contractual obligations to the United States, then they will be subject to the

27   consequences of breaching those contracts. *See id.*(reasoning that whether a proposed

28   injunction could cause a defendant to breach their contract with an absent party does not

1   affect whether complete relief can be accorded to a plaintiff). Furthermore, if Plaintiff

2   prevails, injunctive relief could be tailored to account for the United States' interests.

3   Defendants' contractual obligations to the United States do not prevent the Plaintiff from

4   obtaining meaningful relief. Thus, the United States is not a required party under

5   Rule 19(a)(1)(A).

6           **2.  The United States Has Not Claimed an Interest**

7                To qualify as a required party under Rule 19(a)(1)(B), the absent party must claim

8   an interest regarding the action. Fed. R. Civ. P. 19(a)(1)(B). Under Ninth Circuit precedent,

9   the absent party must *claim* a legally protected interest in the action before an analysis of

10  Rule 19(a)(1)(B)(i)–(ii) is necessary. *Northrop*, 705 F.2d at 1043; *Roberts*, 947 F.3d at

11  1204 (holding that Alaska was not a necessary party because it had not claimed any interest

12  in the action). In *U.S. v. Bowen*, joinder was unnecessary because the absent party was

13  aware of the action and chose not to claim an interest. 172 F.3d 682, 688–89 (9th Cir.

14  1999). In cases where the claim requirement is not discussed, typically the absent party's

15  interest is clear. *See Alto*, 738 F.3d at 1120 (the absent party intervened in the action,

16  asserting its interests); *Dawavendewa*, 276 F.3d at 1156–57 (absent party "strenuously

17  emphasized" its interest in challenged contract provisions).

18               Defendants provide no evidence that the United States has claimed an interest in

19  this action. (*See* Doc. 72; Doc. 77.) Defendants attempt to distinguish *Northrop*, *Roberts*,

20  *Bowen*, and *Ward*—Ninth Circuit cases dismissed because the absent party did not claim

21  an interest—from this case, arguing that the United States does not need to claim an interest

22  here because its contractual interests are implicated by the injunctive relief Plaintiff seeks.

23  (Doc. 77 at 4–7.)  Defendants rely on the principle that a party to a contract is a necessary

24  party to litigation seeking to decimate that contract.  *Dawavendewa*, 276 F.3d at 1157;

25  *Lomoyaketewa*, 520 F.2d at 1325. The caselaw, however, does not support excusing the

26  claim requirement here.

27               In *Dawavendewa*, as discussed above, the plaintiff's lawsuit implicated the Nation's

28  bargained-for rights under the lease. 276 F.3d at 1153–54. The lawsuit challenged the

1   hiring provision's legality in a contract between the absent Nation and the defendant and

2   the court held that the Nation was a required party under Rule 19(a)(1)(B). (*Id.* at 1156–

3   57.) The court found the Nation claimed a legally protected interest by being a signatory

4   to the lease. (*Id.* at 1156.) The court explained that the lease implicated the Nation's

5   "cognizable economic interests" and a judgment rendered in the Nation's absence could

6   risk impairing "[the Nation's] sovereign capacity to negotiate contracts and, in general, to

7   govern [its] reservation." (*Id.* at 1157.) Similarly, in *Lomoyaktewa*, the lawsuit sought to

8   cancel a lease, to which the Hopi Tribe was a signatory and therefore a required party. 520

9   F.2d at 1324–25. In *Lomoyaktewa*, the court did not analyze the claim requirement, instead

10  the court pronounced that "[n]o procedural principle is more deeply imbedded in the

11  common law than that, in an action to set aside a lease or a contract, all parties who may

12  be affected by the determination of the action are indispensable." (*Id.* at 1325.)

13          This case is distinguishable from both *Dawavendewa* and *Lomoyaktewa*. First, those

14  cases involved a tribal nation's sovereign power to negotiate contracts and govern matters

15  on its land. Second, this action does not seek to set aside or decimate a contract between

16  the defendant and the United States. Plaintiff is not directly attacking the SBIR and STTR

17  contracts' provisions or validity and thus the United States is not a party to any contract

18  challenged in this action. *See Disabled Rights*, 375 F.3d at 881. Therefore, the United States

19  is *required* to claim an interest under Rule 19(a)(1)(B).

20          *Northrop* is persuasive. Defendants' Reply attempts to distinguish *Northrop* by

21  arguing that the government was not a formal party to the teaming agreements at issue in

22  that case. (Doc. 77 at 5.) This distinction lacks merit. In *Northrop*, two aircraft companies,

23  plaintiff and defendant, entered into teaming agreements to develop military aircraft for the

24  Navy and Air Force at the government's request. 705 F.2d at 1036. The agreements

25  allegedly stipulated that plaintiff would market aircraft suitable for land-based operation,

26  while defendant would market aircraft suitable for aircraft-carrier operation. (*Id.*) The

27  plaintiff sued the defendant for breaching the teaming agreements when defendant began

28  marketing land-based aircraft. (*Id.*) The district court found the government a necessary

1    and indispensable party and dismissed the complaint *inter alia* for failure to join an

2    indispensable party. (*Id.* at 1042–43.) In reversing the district court, the Ninth Circuit

3    explained that the government was not a required party because they did not claim an

4    interest in the action, they were not a party to any teaming agreements, the action did not

5    seek to set aside or decimate any contract to which the government was a party, and the

6    government's hypothetical interest was not particularized or compelling. (*Id.* at 1043–46.)

7    Like the absent government in *Northrop*, here, the United States has not claimed an interest

8    in the action and is not a party to contracts challenged in the lawsuit. Although the United

9    States is a party to the SBIR and STTR contracts, those contracts are not at issue.

10          In distinguishing *Roberts*, *Bowen*, and *Ward*, Defendants argue that those cases do

11   not involve or jeopardize the absent party's contractual interests in the way that this case

12   does. (Doc. 77 4–7.) Plaintiff, however, seeks injunctive relief to prevent Defendants'

13   further misappropriation of PM&AM's trade secrets and confidential information. (Doc.

14   75 at 6.) Plaintiff does not allege breach in Opticslah's contracts with the United States and

15   this lawsuit does not challenge those contract's terms and provisions. (*Id.*) Whether this

16   litigation may eventually impact Opticslah's ability to perform under its federal contracts

17   is irrelevant to the Rule 19(a) inquiry. *See Disabled Rights*, 375 F.3d at 881 ("the judgment

18   itself would not mandate any change in the agreement, or any breach…one party could

19   refuse to perform, in which case the other party would have its legal remedies.")

20          At oral argument, (Hr'g Tr at 23:15), Defendants cited as support *Barnes v.*

21   *Raytheon Tech. Servs. Co., LLC*, an unpublished decision from this district. No. CV-12-

22   00839-TUC-CKJ, 2013 WL 2317727 (D. Ariz. May 28, 2013). In *Barnes*, the absent

23   United States Army ("Army") contracted with defendant Raytheon to provide training on

24   unmanned aircraft. (*Id.* at *3.) Raytheon subcontracted with General Dynamics

25   Information Technology ("GDIT") to provide training personnel to the Army. (*Id.* at *1.)

26   Under this agreement, the Army required all instructors to maintain a FAA flight physical,

27   and because plaintiff—a former GDIT employee—failed to do so, he was terminated. (*Id.*

28   at *2.) Plaintiff sued for discrimination and defendants argued the Army was a necessary

1    party because it had an interest in requiring its instructors meet certain medical

2    qualifications. (*Id.* at *2–3.) The district court found *inter alia* "[a] judgement in Plaintiff's

3    favor would directly affect the Army's interest in determining the job responsibilities of

4    participants in the Warfighter FOCUS program and the medical qualification required for

5    instructors." *Barnes*, however, involved a directive–requiring plaintiff to pass a FAA flight

6    physical—directly from the Army, whereas here, the government has not exerted any

7    influence and its position remains neutral.

8         In sum, the United States is not a required party under Rule 19(a) because complete

9    relief can be accorded in its absence and the United States has not claimed a legally

10   protected interest, or participated in any way, in this action. Consequently, the Court need

11   not consider Rule 19(a)(1)(B), subsections (i)–(ii), or Rule 19(b).

12   **IV.   ORDER**

13        Accordingly,

14        **IT IS ORDERED DISMISSING WITHOUT PREJUDICE** Defendants' Motion

15   to Dismiss for failure to join an indispensable party (Doc. 72.)

16        Dated this 11th day of August, 2022.

17

18

19   _____
     Honorable John C. Hinderaker
20   United States District Judge

21

22

23

24

25

26

27

28