WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Physics, Materials, and Applied Mathematics Research LLC,<br><br>  Plaintiff,<br><br>v.<br><br>Jeremy Yeak, et al.,<br><br>  Defendants. | No. CV-20-00379-TUC-JCH<br><br>**ORDER** |

Before the Court is Plaintiff's Application for Attorney Fees and Costs. Doc. 319. The matter is fully briefed (Docs. 320 and 334). On July 1, 2024, the Court heard oral argument. For the following reasons, the Court will grant Plaintiff's Motion, awarding $2,366,746.25 total in attorney fees and $19,557.06 in taxable costs. Awarding attorney fees is appropriate in this matter under the *Associated Indemnity* factors. Further, Plaintiff is eligible to recover attorney fees under A.R.S. § 12-341.01 because Plaintiff is the successful party in this action, the proposed fees arose from or were inextricably intertwined with claims arising out of a contract, and the fees requested are reasonable.

**I.   An Award of Attorney Fees is Warranted Under the Circumstances**

There is no presumption that attorney fees be awarded to a prevailing party under A.R.S. § 12-341.01. *Associated Indem. Corp. v. Warner*, 694 P.2d 1181 (Ariz. 1985) (en banc). The Court considers several factors to determine whether attorney fees should be granted. *Id.* ("*Associated Indemnity* factors").

*The merits of the unsuccessful party's claim or defense.* Defendants mounted several

defenses including statute of limitations, invalid contract, and breach of the duty of good faith and fair dealing. Some defenses had little merit and others were a closer call. Defendants ultimately did not prevail on any defenses. Defendants also attempted to relitigate previously dismissed defenses, causing additional, unnecessary work for Plaintiff and the Court. This factor favors awarding attorney fees.

*Whether the litigation could have been avoided or settled.* PM&AM made good faith attempts at settlement and Defendants did not. PM&AM corresponded with Yeak for nine months prior to filing suit, requesting Yeak cease breaching the Employment Agreement. Doc. 319 at 10. After PM&AM filed suit, the parties had an early mediation, where PM&AM made a $600,000 settlement offer. *Id.* Defendants countered with only $25,000. *Id.* Defendants argue "the parties were working with different, more limited facts" at the time, but it was Defendants who had the information necessary to make an informed decision. Doc. 320 at 7. Indeed, Plaintiff was at an informational disadvantage, still needing to uncover through discovery exactly what Defendant Yeak had been doing immediately before and after his employment ended at PM&AM. After mediation failed, Defendants made an Offer of Judgment for $116,000. Defendant did not make another offer until the eve of trial, and then for only $196,000—substantially less than Plaintiff's recovery at trial. This factor strongly favors awarding attorney fees.

*Whether assessing fees against the unsuccessful party would cause extreme hardship.* Defendants have raised no arguments of extreme hardship, but the Court assumes its award will have a significant financial impact on Defendants. This factor is neutral.

*The successful party did not prevail with respect to all relief sought.* Plaintiff prevailed on all ten claims brought before the jury. The jury awarded monetary damages for each claim and assessed punitive damages against Defendant Yeak. The jury did not assess punitive damages against Defendant Opticslah and declined to award exemplary damages against Defendants. This factor strongly favors awarding attorney fees.

*The novelty of the legal question presented.* This case involved complex trade secrets, but the legal issues were not unusually complex and, ultimately, Defendants'

liability was clear. This factor favors awarding attorney fees.

*Whether an award would deter future litigants from pursuing tenable claims or defenses.* Defendant Yeak's actions leading to the lawsuit were brazen. Defendants at times took weak legal and factual positions during the litigation. If anything, an award of attorney fees here would discourage other litigants from pursuing *un*tenable claims or defenses. This factor favors awarding attorney fees.

In total, the *Associated Indemnity* factors favor awarding attorney fees in this matter.

## II.     The Proposed Fees are Recoverable Under A.R.S. § 12-341.01

Under A.R.S. § 12-341.01, the Court may award reasonable attorney fees to the successful party in a contested action arising out of contract.

### A. Plaintiff is the successful party in this action.

At oral argument, Defendants conceded Plaintiff is the "successful party" in the action. In briefing, Defendants admit Plaintiff's success only so far as the action arose out of contract or interwoven tort. Doc. 320 at 5. Defendant argues "Plaintiff did not prevail on all relief sought with respect to its trade secret claims" and thus Plaintiff cannot recover fees tied to pursuit of these claims.[1] Doc. 320 at 7–8. But because the misappropriation claims were intertwined with the contractual claims (as discussed more fully below), attorney fees are recoverable under A.R.S. § 12-341.01 even without a finding of willful or malicious misappropriation on the trade secret claims.

Here, the jury found in favor of Plaintiff on all claims: breach of duty, breach of contract, misappropriation of trade secrets under Arizona law (against Yeak), misappropriation of trade secrets under Arizona law (against Opticslah), misappropriation of trade secrets under federal law (against Yeak), misappropriation of trade secrets under federal law (against Opticslah), fraud, unfair competition (against Yeak), unfair competition (against Opticslah), and unjust enrichment. Doc. 298. The jury awarded monetary damages on each of these claims, as well as punitive damages against Defendant

---

[1] In support, Defendant cites A.R.S. § 44-404(3) and 18 U.S.C. § 1836(b)(3)(D), which permit an award of attorney fees only for willful and malicious misappropriation of trade secrets. Doc. 320 at 8.

Yeak. Doc. 298. The only findings *not* in Plaintiff's favor were that Defendants' trade secret misappropriations were not willful or malicious, and that Opticslah's actions did not warrant punitive damages. Doc. 298. Contrary to Defendants' suggestion, Plaintiff's verdict and the substantial damages awarded are not indicative of "partial or limited success." Doc. 320 at 5. Plaintiff is unqualifiedly the successful party in this action.

**B. This action arose out of contract.**

"When the contract in question is central to the issues of the case, it will suffice as a basis for a fee award." *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 836-37 (9th Cir. 2001). Fees may be awarded under A.R.S. § 12-341.01 for related claims "inextricably interwoven" with those arising under contract. *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 212 P.3d 853, 860 (Ariz. Ct. App. 2009) (collecting cases).

Here, the employment agreement between Plaintiff and Defendant Yeak was central to the claims in this action. And the same set of facts—the same conduct by Defendant Yeak—that gave rise to the contractual claims also precipitated the remaining claims. Litigation of Plaintiff's trade secret, tort, and other claims was inextricably interwoven with litigation of the contractual claims.

**C. Plaintiff's proposed fees are reasonable.**

The starting point for calculating reasonable fees is to "multiply[] the number of hours reasonable [to] expend[] on a case by a reasonable hourly rate." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). The Court may then increase or reduce that figure based on a variety of factors. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) ("*Kerr* factors"). The Court will address the most relevant factors.

*Time and Labor Required.* Plaintiff had the right to protect its contractual rights and trade secrets. Plaintiff's counsel reports spending 5,685.2 hours across four years to protect PM&AM's interests in this matter. Based on the Court's review of the billing entries, Plaintiff's counsel does not appear to have engaged in misconduct or unjustified fee-generating.

*Skill Required.* Legal expertise aside, the subject matter here involved several

complex and technical scientific issues. This matter also required a thorough understanding of intellectual property, employment law, and government contracts. Further, it required a range of legal skills and expertise to handle mediation, discovery, dispositive motions, and miscellaneous briefings, notwithstanding the substantial effort and skill that goes into preparing for and running a successful two-week jury trial.

*Customary Fee.* The hourly rates billed appear reasonable under the circumstances. The rates charged here appear commensurate with other attorneys of similar specialization and experience appearing in similar matters.

*The Amount Involved and the Results Obtained.* This matter involved valuable trade secrets and government contracts, returning a jury verdict of more than $4 million. Plaintiff's position had significant merit and Plaintiff prevailed at trial.

*Experience, Reputation, and Ability of the Attorneys.* The quality of Plaintiff's legal representation was high. The attorneys were well qualified, with technical expertise and legal experience. Briefing from Plaintiff's counsel was typically focused, correct, and helpful to the Court.

*Nature and Length of the Professional Relationship.* Jones Day has a nearly 20-year professional relationship with PM&AM and has represented PM&AM in various matters over the years.

*Awards in Similar Cases.* In two recent cases with similar claims, courts awarded over $2 million in attorney fees and non-taxable costs to the prevailing party. In *John Bean Techs. Corp. v. B GSE Group, LLC*, No. 1:17-CV-00142-RJS, 2023 WL 6164322, at *29 (D. Utah Sept. 21, 2023), the Court awarded $2,171,092.75 in attorney fees and non-taxable costs following judgment for damages of $1,125,033, in a case involving claims of unfair competition and breach of confidentiality agreements. In *American Career College v. Medina*, No. 2:21-cv-00698-PDG-SK, Doc. # 298, (C.D. Ca. October 6, 2023) the Court awarded $2,800,497 in attorney fees, following judgment for damages of $3,133,205 in a case involving claims for breach of duty of loyalty and unfair competition.

Defendants argue Plaintiff's fees are unreasonable because Plaintiff is not entitled

to recover fees associated with its trade secret claims; much of the work by Plaintiff's counsel was unnecessary, excessive, and/or duplicative; and Plaintiff engaged in impermissible block billing. Doc. 320 at 2–3. As addressed above, the trade secret claims were inextricably interwoven with Plaintiff's contractual claims. Also, Defendants at times persisted in maintaining weak positions, the resolution of which increased the cost of this litigation.

The Court agrees some of the work by Plaintiff's counsel was excessive and some block billing entries were too vague. The Court anticipated making meaningful cuts because, for example, Plaintiff at times had five lawyers present for trial. However, Plaintiff's preemptive offer to reduce its fee application by 40% more than addresses the Court's concerns.

At oral argument, Defendants argued Plaintiff's block billing entries should be reduced by a further 18%, but provided no support for the figure they propose. The Court will not reduce attorney fees based on an arbitrary figure. But even if the Court accepted Defendants' proposed reductions, it is still unclear such would reduce the fee amount to less than what Plaintiff has already proposed under its voluntary 40% reduction. *See* Doc. 334, Exh. P.

**III.     Fees for Litigation and Trial Misconduct**

The Court will not award fees for litigation and trial misconduct. A district court has broad discretion to require a litigant who engages in bad faith conduct to pay the innocent party's legal fees "incurred solely because of the misconduct…." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 103–04 (2017). Though Defendants sometimes took ill-advised positions, these actions did not rise to the level of bad faith or misconduct. Further, the $93,303.25 in fees Plaintiff incurred to address Defendants' "bad faith litigation conduct" (Doc. 319 at 12) were incidental to broader litigation of the employment contract, and thus this sum is already recoverable against Defendant Yeak under A.R.S. § 12-341.01.

**IV.     Preparing the Application for Attorney Fees and Costs**

Plaintiff also requests reasonable fees for preparing the Application for Attorney

Fees and Costs. At oral argument, Defendants reported charging $8,000 for their work responding to the Fee Application and suggested that same figure would be a reasonable award for Plaintiff. The work necessary to prepare a fee application is significant, and greater than what is required to respond to one. Plaintiff's request for $12,500 for work related to the fee application is reasonable and the Court will grant Plaintiff's request.

**V.     Conclusion**

The Court, in exercising its discretion, will grant Plaintiff's Motion, and award $2,354,246.25 in attorney fees as requested in the Fee Application. The Court will award Plaintiff an additional $12,500 in attorney fees for preparing the Application for Attorney Fees and Costs, for a total award of $2,366,746.25 in attorney fees.

Defendants do not oppose Plaintiff's request for taxable costs, and the award is proper. Thus, the Court will also award $19,557.06 in taxable costs to Plaintiff.

Accordingly,

**IT IS HEREBY ORDERED granting** Plaintiff's Application for Attorney Fees and Costs (Doc. 319) and Plaintiff's request for fees incurred to prepare the Application for Attorney Fees and Costs.

Plaintiff is entitled to collect $2,366,746.25 in attorney fees from Defendant Jeremy Yeak and $19,557.06 in taxable costs from Defendants Jeremy Yeak and Opticslah, which will be reflected in the Court's Final Judgment.

Dated this 11th day of July, 2024.

John C. Hinderaker
United States District Judge