WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Physics, Materials, and Applied Mathematics Research LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Jeremy Yeak, et al.,<br><br>    Defendants. | No. CV-20-00379-TUC-JCH<br><br>**ORDER** |

Before the Court is Plaintiff's Memorandum in Support of Permanent Injunction, seeking to prevent Defendants Jeremy Yeak and Opticslah from further use of Plaintiff's Confidential Information, Developments, and Trade Secrets. Doc. 335. The matter is fully briefed (Docs. 335, 329, and 337). On July 1, 2024, the Court heard oral argument (Doc. 338). For the following reasons, the Court will grant in part Plaintiff's request for a permanent injunction.

**I.  Background**

Plaintiff seeks to permanently enjoin Defendants from using Plaintiff's Confidential Information, Developments, and Trade Secrets, arguing (1) Defendants continue to threaten irreparable injury, (2) the jury verdict was not an adequate remedy, (3) the balance of hardships favors an injunction, and (4) an injunction is in the public interest. Doc. 335 at 5–8. Defendants oppose a permanent injunction because (1) Plaintiff cannot show irreparable injury, (2) Plaintiff received adequate compensation from the jury, and (3) a permanent injunction could restrain Defendants from lawful conduct. Doc. 329 at 3–6. In

its reply, Plaintiff argues (1) misappropriation can cause irreparable injury regardless of whether the misappropriation was willful and malicious, and (2) the damages awarded by the jury do not compensate for future wrongdoing. Doc. 337.

## II. Whether Plaintiff is Entitled to Injunctive Relief

Before a court can grant a permanent injunction, a plaintiff seeking relief must satisfy a four-factor test:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court. *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–313 (1982).

### A. Plaintiff has Suffered Irreparable Injury

Plaintiff has suffered irreparable injury through misappropriation of its trade secrets. Defendants argue that the jury did not indicate which—or whether more than one—trade secret was misappropriated. Doc. 329 at 6. Because of this, Defendants argue, a permanent injunction covering all three of Plaintiff's trade secrets might restrain Defendants from otherwise lawfully using any of these trade secrets that the jury did *not* find were misappropriated. *Id.*

The Court can determine which of Plaintiff's trade secrets Defendants misappropriated for the purposes of fashioning an equitable remedy. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633–34 (1953) (district court has wide latitude in fashioning a remedy, so long as there is a reasonable basis for the decision). The Court may draw reasonable inferences from the evidence presented at trial to find facts, so long as such facts are not inconsistent with trial evidence. *See, e.g.*, *Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 901 (9th Cir. 1997) (the district court permissibly "drew inferences from the verdicts … and then used those implicit findings of

fact as the basis for judgment as to certain issues.").

The parties presented sufficient evidence at trial for the Court to find Defendants misappropriated all three trade secrets at issue in this case. *See* Doc. 335 at 3–4 (summarizing trial evidence). Defendant used each of the three trade secrets in various proposals submitted to the government to obtain SBIR/STTR contracts. *Id.* Accordingly, the Court finds, for the purpose of fashioning an equitable remedy, that Defendants misappropriated each of Plaintiff's "Rainbow Lines," "Nanosecond Vortex," and "Average of Three" trade secrets.

### B. Plaintiff has No Other Adequate Remedy at Law

The jury compensated Plaintiff for Defendants' past misuse of its trade secrets. But Plaintiff does not have an adequate remedy to prevent Defendants' future misappropriation.[1] Asking Plaintiff to continue filing lawsuits every time Defendants commit new acts of misappropriation is not an adequate legal remedy.

Courts have broad discretion to grant injunctive relief where "there exists some cognizable danger of recurrent violation." *W. T. Grant Co.*, 345 U.S. at 633. As to whether Defendants pose a danger of recurrent violation, the colloquialism "past behavior is the best predictor of future behavior" comes to mind. Defendants have a longstanding pattern of misusing Plaintiff's trade secrets, dating back to 2017. Defendant Yeak began using Plaintiff's trade secrets for his own gain while he was still employed by Plaintiff. Defendants have continued to use Plaintiff's trade secrets—applying for additional SBIR contracts even throughout this litigation. Defendants argue that a permanent injunction would cause hardship. Further, Defendants argue granting a permanent injunction is unnecessary because, Defendants believe, Plaintiff was already compensated for Defendants' future use of the trade secrets. These are all strong indicators that Defendants feel entitled to continue using Plaintiff's trade secrets. It is clear only an injunction will

---

[1] Defendants argue that the damages model presented by Plaintiff's expert accounted for "future sales and future profits." Doc. 329 at 4–5. But this model only considered future sales and profits from the SBIR contracts *already* awarded. The model did not account for any future misuse of Plaintiff's trade secrets from, for example, applying for new SBIR contracts. At oral argument, Defendants conceded that the jury's award for "future damages" was limited to the contracts already procured by Defendants.

- 3 -

stop Defendants' misappropriation and protect Plaintiff's rights. *See Origami Owl LLC v. Mayo*, No. CV-15-00110-PHX-DGC, 2017 WL 413075, at *6 (D. Ariz. Jan. 31, 2017).

### C. The Balance of Hardships Favors an Injunction

PM&AM has shown that the balance of hardships between Plaintiff and Defendants favors granting an injunction. Enjoining the use of trade secrets to which a defendant has no right cannot be hardship. *See Equate Media, Inc. v. Suthar*, No. 221CV00314RGKAGR, 2024 WL 1217217 (C.D. Cal. Mar. 20, 2024). Defendant has no right to Plaintiff's trade secrets, thus enjoining Defendants from future use would not cause hardship. In contrast, denying an injunction would cause hardship to Plaintiff. Plaintiff spent more than five years and a significant amount of money and effort to protect its trade secrets here. To require Plaintiff to file a new lawsuit every time Defendants misappropriate Plaintiff's trade secrets in the future would be a significant hardship.

### D. Public Interest Favors Granting an Injunction

It is in the public interest to foster innovation and scientific advancement through competition and sharing of ideas. But there are necessarily limits, or regulations, to the way technology and other advancements are developed. For example, Plaintiff's principal, Dr. Kevin Kremeyer, testified to the substantial effort and time required upfront to develop a technology—long before any commercialization or profitability can be realized. Robust intellectual property protections encourage innovation by protecting this upfront development from impermissible use by others. In this way, the public has a strong interest in ensuring trade secrets are protected.

Here, Plaintiff spent substantial upfront effort to develop its trade secrets. Plaintiff has the right to use, develop, and profit off its trade secrets through further development, licensing, or commercialization. It is in the public interest to ensure Plaintiff's trade secrets are protected.

Further the jury found Defendants wrongfully used Plaintiff's trade secrets to obtain SBIR/STTR contracts from the government and it is in the public interest to ensure government money is not awarded for wrongful conduct.

### III. Scope of Permanent Injunction

The Court will permanently enjoin Defendants from future use of the three trade secrets that are at the center of this litigation. Although other PM&AM "Confidential Information" and "Developments" were referenced during trial, the injunction will apply only to the three trade secrets. Further, the injunction does not prevent Defendants from using the three trade secrets to complete work on Defendants' Molten Salt Phase II and Trace Elements Phase II contracts.

#### A. Permanent Injunction Applies to Plaintiff's Three Trade Secrets

Injunctive relief "must be tailored to remedy the specific harm alleged." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974. Injunctive relief "is historically 'designed to deter, not punish[.]'" *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 62 (1975) (citation omitted). The trial focused mainly on Plaintiff's three trade secrets, which also constitute PM&AM "Developments" and "Confidential Information." That said, those terms—"Developments" and "Confidential Information"—are broad, encompassing additional items that were raised during trial, and some that were not. So that the permanent injunction is specific and provides clear notice to the parties, the Court will limit the scope of the permanent injunction to the three trade secrets.

#### B. Defendants May Complete Work on Two Remaining Contracts

The Court will permit Defendants to continue using Plaintiff's trade secrets for the limited purpose of fulfilling Defendants' two remaining government contracts. Defendants have two ongoing SBIR/STTR contracts that used Plaintiff's trade secrets: Molten Salt Phase II[2] (ends August 21, 2024) and Trace Elements Phase II[3] (ends May 10, 2025). Doc. 335 at 3–4. Plaintiff's expert, Ms. Wills, included these contracts in her estimate for damages and the jury considered them when awarding damages. Thus, Plaintiff's damages claim accounts for Defendants' unauthorized use of trade secrets related to these two

---

[2] Also known as "High Precision Broadband Optical Spectrometer for Molten Salt Reactors," SBIR contract DE-SC0021919. https://www.sbir.gov/node/2282297.
[3] Also known as "A Broadband and Compact Dual Comb Spectrometer for Precise Field Detection of Trace Elements and Chemicals," STTR contract HDTRA223C0002. https://www.sbir.gov/node/2572549.

contracts, including completion of the contracts. Also, the government awarded these contracts and is a party to these contracts, but the government was not represented during the litigation. The government, and therefore the public, has an interest in seeing that the two contracts are completed. The Court concludes that it would be inequitable to enjoin Defendants from completing the Molten Salt Phase II and Trace Elements Phase II contracts.

## IV.   Conclusion

Defendants Jeremy Yeak and Opticslah, LLC shall be permanently enjoined and restrained from further use, copying, reproduction, disclosure, and/or commercialization of Plaintiff's Trade Secrets known as the "Average of Three," "Nanosecond Vortex," and "Rainbow Lines," except as instructed by the Court above.

Defendants Yeak and Opticslah are further enjoined and restrained from using Plaintiff's Trade Secrets for research and development under any future SBIR/STTR grant or contract, or any other government contract.

No later than August 2, 2024, Defendants Yeak and Opticslah are ordered to return all Plaintiff's property and any material embodying Plaintiff's Confidential Information, Developments, and Trade Secrets.

Any material breach of the Permanent Injunction will entitle Plaintiff to immediate injunctive relief to enforce this Permanent Injunction, as well as its reasonable attorney fees and costs arising from bringing an action against Defendants.

This Permanent Injunction shall be applicable to Defendants and their affiliates, officers, directors, employees, agents, representatives, successors, assignees, and all persons, partnerships, corporations, and other entities acting under, by, through, on behalf of, or in concert with Defendants.

**SO ORDERED.**

Dated this 11th day of July, 2024.

John C. Hinderaker
United States District Judge